879 F.2d 862
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dickson L. HENDLEY and Ryan D. Hendley, as Shareholders and
Directors of I.H. Services, Inc., of North
Carolina, Plaintiffs-Appellees,
v.
Terry L. LEE, Defendant-Appellant,
and
I.H. Services, Inc., of North Carolina, Defendant.
Dickson L. HENDLEY and Ryan D. Hendley, as Shareholders and
Directors of I.H. Services, Inc., of North
Carolina, Plaintiffs-Appellants,
v.
Terry L. LEE, Defendant-Appellee,
and
I.H. Services, Inc., of North Carolina, Defendant.
 Nos. 88-2631, 88-2639.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 9, 1989.
Decided: July 18, 1989.
 
 Before K.K. HALL, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 Cecil Huron Nelson, Jr. (Wilkens, Nelson & Kittredge, P.A.; R. Walton McNairy, McNairy, Clifford, Clendenin & Parks, on brief), for appellants.
 Carl G. Ferguson (William L. Dennis, Leatherwood, Walker, Todd & Mann, on brief), for appellee.
 PER CURIAM:
 
 
 1
 In this diversity action brought by Dickson L. Hendley and Ryan D. Hendley (the Hendleys) as plaintiffs against defendant, Terry L. Lee (Lee), plaintiffs sought judicial intervention in the affairs of I.H. Services, Inc., of North Carolina (the company), a corporation organized under the laws of South Carolina, upon allegations that plaintiffs as owners of fifty percent of the stock of the corporation and defendant as owner of the remaining fifty percent of the stock had reached an impasse in the conduct of the corporation's business and that the corporation was suffering or would suffer irreparable injury and that its business could no longer be conducted to the advantage of the shareholders generally. Under such circumstances Section 33-21-150 of the South Carolina Code authorizes a court to dissolve and liquidate the assets of a corporation. Another section of the same statute, Section 33-21-155(a)(4), empowers a court to grant other relief including ordering the purchase of the shares of any shareholder either by the corporation or by other shareholders.
 
 
 2
 Following a lengthy trial the district court entered extensive findings of fact and conclusions of law including a finding that the total value of the corporation as of the time of the trial was $1,688,348.12. The Hendleys were ordered to purchase Lee's fifty percent stock interest in the company for one-half of this amount or $844,174.06. See Hendley v. Lee, 676 F.Supp. 1317 (D.S.C.1987). The parties eventually complied fully with this order from which there was no appeal.
 
 
 3
 In additional orders entered thereafter the district court fixed Lee's compensation for the final fiscal year for which he worked for the company at $375,702.85. These orders also became final without appeal.
 
 
 4
 The buyout order contained a provision for Lee's continued employment by the company following its takeover by the Hendleys (see 676 F.Supp. 1317, 1331-32), and the court retained jurisdiction of the action for the purpose of resolving questions relating to Lee's compensation and severance pay under his prior employment contract in the event of his termination as an employee. Lee was in fact terminated by the Hendleys at the end of February 1988, and the case is now before this court on the appeals of the Hendleys and Lee from an order entered by the district court on August 22, 1988 in which the total remaining compensation due Lee by the company was awarded. For the reasons to follow we affirm in part and reverse and remand in part.
 
 I.
 
 5
 Lee began his employment with the company under an agreement executed September 23, 1981 which contained the following provisions relevant to this action:
 
 
 6
 8. If any of the following acts occur, Employee's employment may be terminated by The Company ... immediately:
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 (c) If the Employee performs any negligent or intentional act which damages the reputation or property of The Company....
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 (e) If Dickson L. Hendley, Joel W. Wells ... determine that it would be in the best interest of The Company ... to terminate Employee's employment (and without any requirement to show cause);
 
 
 13
 (f) In the event of termination under paragraph 8(e), Employee shall be entitled to continue to receive his current salary for a six (6) month period of time. If Employee is terminated under any other subsections of paragraph 8, he shall not be entitled to any further benefits or compensation hereunder.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 15. The term of employment provided in paragraph 1 above shall automatically extend on a year to year basis unless either party gives written notice to the contrary to the other prior to the end of the original term or prior to the end of any subsequent annual extended term. All provisions and conditions of this Agreement shall continue to apply and be in full force and effect during any such extended term or terms of employment.
 
 
 17
 At a meeting of the stockholders of the company on October 23, 1985 the following action was taken:
 
 
 18
 1. Bonus set for years 1985 and forward as follows:
 
 
 19
 If earnings for year reach $289,049 pretax before Bonus, Terry Lee has a base salary of $65,000.00 and is guaranteed a bonus of $121,250.00. Dick Hendley will be guaranteed $63,750.00. Excess bonus money to be distributed on the following basis:
 
 65% of monies to Terry Lee
 35% of monies to Dickson L. Hendley
 
 20
 As stated before, Lee's employment was terminated by the Hendleys effective March 1, 1988, and in its order of August 22, 1988 the district court found that he was terminated pursuant to paragraph 8(e) of the employment agreement and was therefore entitled under paragraph 8(f) to six months' severance pay based on his "current salary." Relying for the most part on dictionary definitions of the words "salary" and without reference to the word "current" the court held that it did not include a bonus of any kind, and Lee was therefore awarded severance pay based on one-half of his annual base salary of $65,000, or $32,500.
 
 
 21
 Following the same reasoning the district court in fixing Lee's compensation for the four months that he was employed by the company in fiscal year 1988 used the figure of $5,417 a month ($65,000 divided by 12) to arrive at a total compensation of $21,668.
 
 
 22
 Finally, because of the excellent services found to have been rendered the company by Lee during the transition period the court exercised its discretion to allow Lee a non-salary bonus in the amount of $25,000 pursuant to S.C.Code Ann. Sec. 33-21-155(a)(3).
 
 
 23
 The total compensation thus found to be due Lee was therefore calculated as follows:
 
 
 24
 6 months severance pay ( 1/2 of $65,000) .... $32,500.00
4 months salary at $5,417 .................... 21,668.00
Court-ordered bonus .......................... 25,000.00
 ------------
Total ....................................... $79,168.00
Less amount previously paid Lee .............. 52,833.34
 ------------
Balance due Lee ............................. $26,334.66
 
 
 25
 While the dictionary definitions of the word "salary" and the authorities relied on by the district court certainly support its conclusion that under ordinary circumstances salary does not include bonus, in our view the district court erred in failing to give appropriate effect to the interpretation placed on the employment agreement by the parties themselves. In a letter dated January 21, 1988 from the plaintiff, Ryan Hendley, to the defendant Lee it was stated:
 
 
 26
 Your employment is pursuant to your employment agreement of September 23, 1981 as amended by a first amendment of October 30, 1982. This contract is in force, and my proposals for a smooth transition in no way attempt to modify that agreement. I am not asking for your resignation, as you surely know, and in fact I feel that your continued employment is vital to the transition process. I have not asked for modifications to your employment agreement, rather I am making every effort to follow the terms of your employment contract and the letter and spirit of Judge Anderson's order for a smooth transition.
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 You refer to a "drastic reduction" in your compensation. Again, nothing could be further from the truth. Your compensation is set according to the October 23, 1985 agreement upon which we have all focused for a number of months. You are guaranteed a basic salary of $65,000 per year ($5,417 per month), as confirmed by Judge Anderson. You are also guaranteed a bonus of $121,250 if company profits reach a certain level during the coming year....
 
 
 30
 Since we are reasonably confident that the profit levels of the company may entitle you to the guaranteed bonus of $121,250 we are going ahead and paying you that amount even though, of course, there are no guarantees that profits will in fact reach that level and very well may not without your cooperation.
 
 
 31
 * * *
 
 
 32
 * * *
 
 
 33
 Once again, your continued employment with the company is essential. You know it. I know it. Judge Anderson knows it. It would be absurd for me to do anything that would constitute a request for your resignation. You know this also. I want you to continue to work with the company and to follow fully the terms of your employment contract and Judge Anderson's order.
 
 
 34
 Although it is clear that working relations between the Hendleys and Lee at this point were certainly less than harmonious, Lee continued to work for the company for more than a month after receiving this letter, and the record reflects that during the four months Lee worked during the transition period he brought in nine new accounts with total annual sales of approximately $1,180,000 and a predicted gross annual profit of $216,000 which alone was more than enough to cover Lee's guaranteed annual bonus of $121,250. Surely it was not contemplated by the parties that Lee would continue to work at the same pace during the transition period, continue to build up the business in this manner and yet be compensated at a rate that would amount to not more than twenty percent of the rate he had been receiving.
 
 
 35
 Moreover, there appears to be an inconsistency between the district court's finding in the buyout order as to Lee's "functional compensation" (the amount earned by Lee by virtue of his own exertions as distinguished from any amount paid him as a bonus or dividend) and the finding in the order now on appeal that "current salary" meant only Lee's annual base salary of $65,000. After stating the steady growth the company had experienced under Lee's management the district court, in arriving at the total value of the corporation, said:
 
 
 36
 During all of these years the gross receipts, and therefore the profits, of the company were generated principally as a result of Lee's personal efforts and activities, along with the backing and assistance of the South Carolina corporation. It is difficult to consider then that Lee's functional compensation for the most recent fiscal year was not $249,993 but only $100,000. By even a conservative judgment, Lee's functional compensation would be in the $150,000 to $200,000 range. Indeed, under the compensation plan set for the years 1985 and forward, which as a bottom line still remains in full force and effect today, Lee was guaranteed compensation of $186,250 a year if the pre-tax earnings of the company were only $289,049.... Further he is guaranteed 65% of any additional monies that are left over after a non-functional payment of $63,750 to Dick Hendley.
 
 
 37
 Hendley v. Lee, supra, 676 F.Supp. at 1328.
 
 
 38
 As an additional reason for denying Lee the guaranteed bonus the district court found that when Lee ceased to be a stockholder he was no longer eligible to receive a bonus. We find nothing in the minutes of the stockholders' meeting of October 23, 1985 or elsewhere in the record to support this finding. It simply appears that Lee was to receive the guaranteed bonus of $121,250 before Hendley received any part of the money available for the payment of bonuses.
 
 
 39
 We conclude, therefore, that when appropriate effect is given to the parties' own interpretation of the employment agreement as reflected in their words and actions and the court's finding as to the value of Lee's functional compensation, Lee is entitled to have the $121,250 guaranteed bonus included in the calculations of his severance pay and his compensation for the four months he worked during the transition period.
 
 II.
 
 40
 In their appeal from that portion of the order in which Lee was awarded a court ordered bonus of $25,000 the Hendleys do not question the authority of the court to make the award under the South Carolina statute referred to above but rather take issue with the court's award of any compensation at all to Lee. It is their basic contention that Lee was guilty of various wrongful acts in the conduct of the business in consequence of which they had him cited for contempt before the district court on several occasions. In each of these instances the district court failed to find the charges supported by the evidence, and they were dismissed. On the record before this court we are unable to say that these findings were clearly erroneous.
 
 
 41
 On the other hand, we have the definite impression that the almost phenomenal success of this company was attributable to Lee's efforts and expertise which continued even into the transition period prior to Lee's termination, and were it not for the fact that we have found Lee entitled to the guaranteed bonus of $121,250 we would have no hesitance in approving the court-awarded bonus of $25,000. It appears, however, that the district court awarded this sum in lieu of the bonus actually claimed by Lee, and we hold he is not entitled to both. On remand, therefore, the $25,000 court-awarded bonus will be eliminated from the judgment.
 
 III.
 
 42
 On appeal both plaintiffs and defendant contend that they were the prevailing parties in the proceedings below, and each has assigned as error the failure of the district court to award attorneys' fees under paragraph 21 of the employment agreement which read:
 
 
 43
 If any suit or action shall be instituted to enforce or interpret this Agreement, the prevailing party shall be entitled to recover from the losing party, in addition to statutory costs, such sums as all courts may adjudge as reasonable for the prevailing party's attorneys' fees in such suit, action, or any appeal thereof.
 
 
 44
 Actions arising under the South Carolina statutes under which this suit was brought are proceedings in equity. Ward v. Ward Farms, Inc., 283 S.C. 568, 324 S.E.2d 63 (1984). Decision as to which of the parties, if either, should be considered the prevailing party in this action was a matter resting within the sound discretion of the district court which we find was not abused. The denial by the court of attorneys' fees to either side is therefore affirmed.
 
 IV.
 
 45
 We have carefully considered the remaining assignments of error and have concluded that they are without merit. Accordingly, the action is remanded to the district court for the entry of judgment in favor of the defendant Lee, the same to consist of the following items:
 
 
 46
 6 months severance pay ( 1/2 of $65,000) ........... $32,500.00
1/2 of guaranteed bonus of $121,250 ................. 60,625.00
4 months salary at $5,417 ........................... 21,668.00
Pro rata part of guaranteed bonus for 4 months ...... 40,417.00
 -------------
Total ............................................. $155,210.00
Less amount previously paid Lee ..................... 52,833.34
 -------------
Balance due Lee ................................... $102,376.66
 
 The judgment of the district court is
 
 47
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.